UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GIGI'S CUPCAKES, LLC, | § | |
| | § | |
| Plaintiff/Counterdefendant, | § | |
| | § | |
| v. | § | CONSOLIDATED CIVIL ACTION NO. |
| | § | 3:17-CV-3009-B |
| | § | |
| 4 BOX LLC, et al., | § | |
| | § | |
| Defendants/Counterclaimants, | § | |
| | § | |
| v. | § | |
| | § | |
| KEYCORP, LLC, et al., | § | |
| | § | |
| Counterdefendants. | § | |

**MEMORANDUM OPINION AND ORDER**

On August 16, 2018, Defendants filed a Motion for Reconsideration, Doc. 43, of the Court's choice-of-law decision found in the Court's August 6, 2018, Memorandum Opinion and Order. Doc. 42. For the following reasons, the Court **DENIES** Defendants' motion. However, the Court will withhold ruling on the choice-of-law issue as it applies to the Defendants' franchise-act counterclaims until the record is more developed.

I.

BACKGROUND

These consolidated cases stem from a dispute between franchisees from many different states and their current franchisor, GiGi's Cupcakes, LLC. Plaintiff, this franchisor, filed suit against Defendants, franchisees, asking this Court to enforce and declare valid the franchise agreements that

-1-

govern the various relationships between the parties. Franchisees responded with their own counterclaims against the franchisor for breach of contract and fraud associated with the franchise agreements. Franchisees also brought counterclaims against their prior franchisors, with whom they entered the agreements, and other entities and individuals associated with the franchisors.

On August 6, 2018, this Court entered a Memorandum Opinion and Order (Order) denying Defendants' Motion to Dismiss but granting their motion to join additional parties as counterdefendants. Doc. 42, Order. In that Order, this Court held that Tennessee law applies to this case based on Texas choice-of-law rules and the choice-of-law provision in the franchise agreements that govern the parties' relationships. *Id.* at 5 n.3. This decision was based on arguments submitted to the Court in response to the Court's Order for Supplemental Briefing on the law to apply in this case. Doc. 39, Order for Suppl. Briefing; *see also* Doc. 40, Defs.' Suppl. Br. on Choice of Law and Venue; Doc. 41, Pl.'s Suppl. Br. on Choice of Law and Venue.

On August 16, 2018, Defendants filed their Motion for Reconsideration of Choice of Law Issues in Court's August 6, 2018 Order Pursuant to F.R.C.P. 59(e) (Doc. 43). In this Motion, Defendants request that the Court reconsider its decision to apply Tennessee law in this matter. *Id.* On September 6, 2018, Plaintiffs filed their Response in Opposition to Defendant's Motion for Reconsideration (Doc. 56). On September 26, 2018, Defendants filed their Reply (Doc. 62). The motion is now ripe for review.

## II.

## LEGAL STANDARD

Depending on the circumstances of the case, a motion for reconsideration can be filed under Federal Rule of Civil Procedure 54(b) or Federal Rule of Civil Procedure 59(e). *Lozano v. Baylor*

*Univ.*, 2018 WL 3552351, at *1 (W.D. Tex. July 24, 2018) (citing *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017)). "Rule 59(e) governs motions to alter or amend a final judgment; Rule 54(b) allows parties to seek reconsideration of interlocutory orders." *Austin*, 864 F.3d at 336. While Defendants brought their motion under Rule 59(e), *see* Doc. 43, Defs.' Mot. for Reconsideration, the Court will apply the Rule 54(b) standard because Defendants are requesting reconsideration of an interlocutory decision.

Under Rule 54(b), "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin*, 864 F.3d at 336 (citing *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990), *abrogated on other grounds*, *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) (en banc)). Moreover, "Rule 54(b)'s approach to the interlocutory presentation of new arguments as the case evolves can be more flexible [than Rule 59(e)]." *Texas v. United States*, 2018 WL 4271450, at *2–3 (N.D. Tex. Aug. 21, 2018) (quoting *Austin*, 864 F.3d at 336). District courts will afford such relief from interlocutory judgments when "reconsideration is necessary under the circumstances." *Texas*, 2018 WL 4271450, at *2 (quoting *Dallas Cty., Tex. v. MERSCORP, Inc.*, 2 F. Supp. 3d 938, 950 (N.D. Tex. 2014)).

## III.
## ANALYSIS

The thrust of Defendants' argument in their Motion for Reconsideration is that applying Tennessee law to certain cases in this consolidated action would be contrary to the public policies of certain states. Under the Unit Franchise Agreements ("UFAs") that govern the franchise relationships here, the parties agreed "any dispute between Franchisor and Franchisee shall be

governed by and construed in accordance with the laws of the State of Tennessee." Doc. 40-1, UFA for Box 4 LLC, 5.[1] In its previous Order, the Court found that Tennessee law should apply because Defendants failed to argue the choice-of-law clause should not be enforced based on Texas choice-of-law rules. Doc. 42, Order, 5 n.3. Specifically, the Court found that Defendants failed to argue either that (1) the chosen law of Tennessee has no relationship to the parties or (2) applying Tennessee law would be contrary to the public policy of a state with a materially greater interest than Tennessee. *Id.* (citing *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 705 (5th Cir. 1999)). Defendants have now recast their arguments under Texas choice-of-law rules and urge the Court to reconsider its early decision.

In their Motion for Reconsideration, Defendants argue that the Tennessee choice-of-law clause should not be enforced with respect to the Defendants from Minnesota, North Dakota, Indiana, and Ohio (the "Franchisee States") because application of Tennessee law would violate public policies of those states. Doc. 44, Defs.' Mot. for Reconsideration, 5. To support this argument, Defendants note that the Franchisee States have franchise acts that provide protections to franchisees that Tennessee law does not afford and some acts even explicitly deem choice-of-law clauses that deprive franchisees of benefits under the statute to be void.[2] Defendants have brought

---

[1] The parties seem to agree that all the UFAs in this case have provisions substantially similar to this one, which select Tennessee law as the governing law. *See* Doc. 40, Defs.' Supp. Br. on Choice of Law and Venue, 11; Doc. 41, GiGi's Supp. Br. on Choice of Law, 1.

[2] *See, e.g.*, Minn. Stat. § 80C.21 ("Any condition, stipulation or provision, **including any choice of law provision**, purporting to bind any person, who at the time of acquiring a franchise is a resident of this state . . . or purporting to bind a person acquiring any franchise to be operated in this state to waive compliance or which has the effect of waiving compliance with any provision of sections 80C.01 to 80C.22 or any rule or order thereunder is void.") (emphasis added); Ohio Rev. Code § 1334.15(A) ("this chapter represents a fundamental public policy for the state."); *Id.* § 1334.15(B) ("Any waiver by a purchaser of sections 1334.01 to 1334.15 of the Revised Code or any venue **or choice of law provision** that deprives a

counterclaims under those franchise act statutes against Plaintiff, *see, e.g.*, Doc. 6, Defs.' Answer, 45–49, 54 (Counts IV–VII and XIII brought under Indiana franchise act), and wish for those claims to survive Plaintiff's motion to dismiss. Doc. 53, Pl.'s Mot. to Dismiss, 3–5 (arguing these claims should be dismissed because Tennessee law applies). Plaintiff does not seem to dispute that Tennessee law fails to provide the same protections as the Franchisee States do under these statutes, but they would have the Court enforce the choice-of-law clause regardless of the conflict because Defendants have not met their burden of showing the application of the clause is inappropriate. Doc. 56, Pl.'s Resp., 3.

At the outset, some important choice-of-law principles should be highlighted. As noted above, "Texas courts 'permit choice-of-law agreements and the default position is that they are enforceable.'" *Demond*, 2018 WL 4145053, at *3 (quoting *Cardoni v. Prosperity Bank*, 805 F.3d 573, 581 (5th Cir. 2015) (going on to note that "it is not uncommon for a party to overcome them")). "To render a choice-of-law provision unenforceable, a party must satisfy the standards in Section 187(2) of the Restatement (Second) of Conflicts of Laws." *Cardoni*, 805 F.3d at 581. Section 187(2) provides:

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . unless either
>
> > (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> >
> > (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the

---

purchaser who is an Ohio resident of the benefit of those sections is contrary to public policy and is void and unenforceable.") (emphasis added).

-5-

chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws § 187(2).

Defendants assert the clause is unenforceable under § 187(2)(b) because application of Tennessee law would be contrary to fundamental policies of states with materially greater interests, namely the Franchisee States. Doc. 44, Defs.' Mot. for Reconsideration, 11–16. But that is not the only factor under Restatement § 187(2)(b). *Cardoni*, 805 F.3d at 581. Texas courts break the analysis under this section into three steps:

> (1) Does another state have a more significant relationship with the parties and the transaction at issue than the chosen state does under Restatement § 188;
>
> (2) Does that state also have a materially greater interest than the chosen state does in the determination of the particular issue; and
>
> (3) Does that state also have a fundamental policy that would be contravened by the application of the chosen state's law.

*Cardoni*, 805 F.3d at 582 (citing *Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 325–27 (Tex. 2014)). If each of these questions is not answered yes, the Court will enforce the choice-of-law clause.

Here, Defendants focus almost exclusively on the third question, while paying little attention to questions one and two. But if the first two questions are not answered affirmatively, Texas courts will stop the analysis. *See Cardoni*, 805 F.3d at 582. Looking to the first question, the Court must determine whether another state has "a more significant relationship with the parties and the transaction at issue than the chosen state," which requires a factual inquiry into the contacts enumerated in § 188 of the Restatement in light of the principles listed in § 6. *DeSantis v. Wackenhut*

*Corp.*, 793 S.W.2d 670, 678 (Tex. 1990). Section 188 specifies that the contacts to be taken into account are: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties. Restatement § 188(2).[3] This section further notes that "these contacts are to be evaluated according to their relative importance with respect to the particular issue." *Id.* Texas courts weigh these contacts "not by their number, but by their quality." *Cardoni*, 805 F.3d at 582–83 (citing *Minn. Mining & Mfg. Co. v. Nishika Ltd.*, 955 S.W.2d 853, 856 (Tex. 1996)). Unfortunately, because this case is in the early stages of litigation, much of the factual information needed to make this inquiry is not yet available—or if it is, the parties have not brought it to the Court's attention.

To elaborate, Defendants briefly argue that the Franchisee States have a "materially greater interest" in these cases than Tennessee. Doc. 44, Defs.' Mot. for Reconsideration, 10–11. Defendants claim this is the case because they operate their stores outside of Tennessee and because the franchise acts are designed to protect franchisees operating in those states. *Id.* at 11. On the other hand, Defendants admit they have some connection to Tennessee because, as required by their franchise agreements, they make periodic payments to a Tennessee franchisor and took trips to Tennessee to train. *Id.* But, aside from this, neither Defendants nor Plaintiff provides additional facts

---

[3] The principles listed in Restatement § 6(2) that must be considered in the § 188(2) contacts analysis are: (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability, and uniformity of results; and (g) ease in the determination and application of the law to be applied.

for the Court to determine if Tennessee or the Franchisee States have a more significant relationship under Restatement § 188(2) and § 6.[4] For example, the Court is uncertain of where the franchise agreements were negotiated and executed. The Court is also uncertain of the division of performance under the agreements—while the franchisees operate their businesses in their respective states, the prior franchisors seem to have substantial connections to Tennessee. Thus, without more specific and substantiated factual allegations, the Court cannot yet determine if another state has "a more significant relationship with the parties and the transaction at issue than the chosen state." *See Floyd v. CIBC World Mkts., Inc.*, 426 B.R. 622, 641 (S.D. Tex. 2009) ("The Court lacks evidence at this stage of the proceedings to properly analyze all the Restatement factors."). The parties choice of Tennessee law should thus be enforced here because Defendants have not satisfied Restatement § 187(2).

Alternatively, however, the weight of authority suggests that prohibiting a franchisee from asserting claims under its state's franchise act that includes an antiwaiver provision is contrary to the fundamental policies of those states.[5] Thus, while Plaintiff argues in its motion to dismiss that

---

[4] To further aid the resolution of the choice-of-law analysis under Restatement § 187(2)(b), the Court would also highlight the contacts specified in Restatement § 145(2), which governs the determination of which state has the most significant relationship to fraud and misrepresentation cases. *See* Restatement § 145(2) (listing, among other contacts, the place where the plaintiff received the representations, the place where the defendant made the representations, and the place where the plaintiff acted in reliance on the representations). The Court is currently unaware of the state or states where these alleged activities occurred.

[5] *See Cottman Transmission Sys., LLC v. Kershner*, 492 F. Supp. 2d 461, 468–69 (E.D. Pa. 2007) (holding that "application of choice-of-law provision would be contrary to the policies of California, Wisconsin, and New York, which have a materially greater interest than Pennsylvania in the determination of the issue of whether [a franchisor] engage in fraud and deception in franchise sales to residents of those states.") (collecting cases); *Wright-Moore Corp. v. Ricoh Corp.*, 908 F.2d 128, 132–34 (7th Cir. 1990) (finding

Defendants' franchise act claims should be barred if Tennessee law applies, the Court is unwilling to extend this decision that far, principally because it does not have the facts to make a reasoned choice-of-law decision. Further, it may be that once more facts enter the record, the Court will find that Defendants common-law claims can be brought under Tennessee law and their franchise act claims can be brought under the Franchisee States' law. *See Cottman Transmission Sys., LLC v. Kershner*, 536 F. Supp. 2d 543, 549–53 (E.D. Pa. 2008) (denying motion to dismiss Virginia franchise act claim based on Pennsylvania choice-of-law clause but separately enforcing the clause as to common-law claims).

In sum, at this stage, the Court will not dismiss Defendants' franchise act counterclaims based on the Tennessee choice-of-law clause, as this could effectuate an improper waiver of the benefits and protections of those statutes. If these claims remain after appropriate time for discovery and presentation of evidence, the Court will determine if they are barred based on the above choice-of-law rules. However, the Court will enforce the choice-of-law clause and apply Tennessee law to the other claims brought by both sides.

The Court recognizes that the parties have disputed whether the franchise act claims should be dismissed based on the Court's previous choice-of-law holding. *See, e.g.*, Doc. 53, Pl.'s Mot. to Dismiss Counterclaims, 3–5. If Plaintiff/Counterdefendants wish to supplement their motion-to-

---

that Indiana has a strong legislative policy against waiver of Indiana franchise law through choice-of-law provisions and refusing to enforce New York choice-of-law clause); *Zounds Hearing Franchising, LLC v. Bower*, 2017 WL 4399487, at *7 (D. Ariz. Sept. 19, 2017) ("The Ohio franchise regulation statutes and those in similar states always reflect fundamental policy of the state, and a contractual choice of the law of a less protective state cannot defeat the state's protection for an in-state franchise and franchisee.").

dismiss briefing in light of this Order, such as to show why these claims should be dismissed for reasons other than the choice-of-law clause, they may do so within **fourteen days** of the date of this Order **(on or before December 3, 2018)**. Defendants/Counterclaimants may file a reply within **seven (7) days** of that date **(on or before December 10, 2018)**.

IV.

CONCLUSION

After considering Defendants' Motion for Reconsideration of this Court's Order on the law to be applied in this case, Doc. 42, Order, the Court **DENIES** Defendants' motion. The Court will apply Tennessee law to all claims in this case except, for now, Defendants' franchise act counterclaims. The Court will reserve ruling on whether those claims survive a conflicts analysis until the record is further developed. If Plaintiff/Counterdefendants wish to supplement their motion-to-dismiss briefing in light of this Order, they may do so within **fourteen days** of the date of this Order **(on or before December 3, 2018)**. Defendants/Counterclaimants may file a reply within **seven (7) days** of that date **(on or before December 10, 2018)**.

**SO ORDERED.**

**SIGNED: November 19, 2018.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE