UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GIGI'S CUPCAKES, LLC, | § | |
| | § | |
| Plaintiff/Counterdefendant, | § | |
| | § | |
| v. | § | CONSOLIDATED CIVIL ACTION NO. |
| | § | 3:17-CV-3009-B |
| | § | |
| 4 BOX LLC, et al., | § | |
| | § | |
| Defendants/Counterclaimants, | § | |
| | § | |
| v. | § | |
| | § | |
| KEYCORP, LLC, et al., | § | |
| | § | |
| Counterdefendants. | § | |

## MEMORANDUM OPINION & ORDER

Four of the counterdefendants in this case—Gigi's Cupcakes, LLC, KeyCorp, LLC, Sovrano, LLC and Gigi's Operating, LLC (collectively the "Debtors")—have filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division. On January 30, 2019, this Court stayed and administratively closed this consolidated action for ninety days to determine the effect of the bankruptcy proceedings on this action. Doc. 162, Order. The Court requested arguments on whether the stay should be continued after that ninety-day period. Nondebtor counterdefendants Food Business Services, LLC and FundCorp, Inc. and Gina Butler separately moved to extend the ninety-day discretionary stay. Docs. 165 & 166. The franchisees filed a joint response in opposition to these motions. Doc. 169. The moving parties filed replies. Docs. 170 & 171. After reviewing the briefing,

the Court finds that—in the interests of justice and to appropriately control its docket—a stay of some of claims in this case is warranted. The Court thus **GRANTS, in part,** and **DENIES, in part,** Food Business and FundCorp's motion to stay (Doc. 165) and Gina Butler's motion to stay (Doc. 166).

I.

LEGAL STANDARDS

A.   *Automatic Stays*

The automatic stay under 11 U.S.C. § 362(a) generally protects only the debtor in the bankruptcy proceeding, not codebtors, cotortfeasors, or other nondebtors. *See Reliant Energy Servs., Inc. v. Enron Can. Corp.*, 349 F.3d 816, 825 (5th Cir. 2003). Nor does it protect codefendants or preclude severance. *Hamel-Schwulst v. Country Place Mortg. Ltd.*, 406 F. App'x 906, 911 (5th Cir. 2011) (citing *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 544 (5th Cir. 1983)). Further, "[t]he automatic stay of the bankruptcy court does not divest all other courts of jurisdiction to hear every claim that is in any way related to the bankruptcy proceeding." *Picco v. Glob. Marine Drilling Co.*, 900 F.2d 846, 850 (5th Cir. 1990). Thus, despite the initiation of the Chapter 11 proceeding here, this Court can "retain jurisdiction to determine the applicability of the stay to litigation pending before [it], and to enter orders not inconsistent with the terms of the stay." *Id.*

But the Fifth Circuit has recognized at least one instance where the stay may be extended to nondebtors—cases where "there is such an identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Reliant Energy Servs.*, 349 F.3d at 825 (quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)).

However, this exception should only apply where a "claim of a formal tie or contractual indemnification ha[s] been made to create an identity of interests between the debtor and nondebtor." *Id.*

B.  *Discretionary Stays*

District courts have broad, but not unlimited, discretion to stay proceedings "in the interest of justice and in control of their dockets." *Beran v. World Telemetry, Inc.*, 747 F. Supp. 2d 719, 723 (S.D. Tex. 2010) (quoting *Wedgeworth*, 706 F.2d at 545). As such, district courts may issue a discretionary stay against a nonbankrupt codefendant even when an automatic stay is not appropriate under § 362. *Id.* (collecting cases). "A stay can be justified only if, based on a balancing of the parties' interests, there is a clear inequity to the suppliant who is required to defend while another action remains unresolved and if the order granting a stay can be framed to contain reasonable limits on its duration." *Id.* (quoting *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985)). If there is a "fair possibility" that the stay will harm the nonmovant, the party requesting the stay "must make out a clear case of hardship or inequity in being required to go forward." *Id.* (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)).

## II.

## ANALYSIS

FundCorp, Inc. and Food Business Services, LLC (Doc. 165) and Gina Butler (Doc. 166) move to extend the discretionary stay currently in place. They request that the Court stay all claims against them until the automatic stay is lifted in the related bankruptcy proceedings. This consolidated action is comprised of seventeen individual cases with separate, but very similar, claims against the same parties. FundCorp and Food Business are commercial entities that do business with

Gigi's Cupcakes, LLC (the current franshisor) and allegedly benefitted from fraudulent transfers from Gigi's prior to its declaration of bankruptcy. Gigi's Cupcakes is one of the entities that filed for bankruptcy, along with KeyCorp, LLC (Gigi's Cupcakes sole owner), Sovrano, LLC (an investment company associated with Gigi's Cupcakes), and Gigi's Operating, LLC (a subsidiary of KeyCorp that operates the corporate-owned franchises in Texas) (together with FundCorp and FoodBusiness, the "Gigi's Entities"). *See* Doc. 139, Suggestion of Bankruptcy; Doc. 161, Suggestion of Bankruptcy. Gina Butler is one of the original founders of the Gigi's Cupcakes franchise. But after the original (now-defunct) franchise entities transferred their assets and interests, including the existing franchise agreements, to KeyCorp, Butler claims she no longer has an interest in KeyCorp or Gigi's Cupcakes. Doc. 159, Butler's Mot. to Dismiss, 2.[1] The franchisees, however, allege that Butler still has some interest in these entities. *See, e.g.*, Doc. 6, Franchisee 4Box LLC's Answer & Countercl., ¶¶ 103–04. Because the claims raised against FundCorp and Food Business differ from those raised against Butler, the Court resolves each motion in turn.

A. *Claims Against FundCorp and Food Business Are Stayed.*

The franchisees generally assert the following claims against FundCorp and FoodBusiness:

1. State-law fraudulent transfer;

2. Civil conspiracy;

3. Declaratory judgment; and

---

[1] The franchisees make claims against three other parties that have yet to appear in these actions. Alan Thompson was a founder along with Gina Butler. Gigi's Holdings, LLC and Gigi's Franchising, LLC are now-defunct business entities that Butler and Thompson formed to operate as the Gigi's franchisor. The Clerk of this Court entered default against Butler and Gigi's Franchising on October 25, 2018. Doc. 77.

4.      Texas Business Opportunity Act and Deceptive Trade Practices Act.[2]

*See, e.g.*, Doc. 6, Franchisee 4Box, LLC's Answer & Countercl., ¶¶ 201–09 (fraudulent transfer), 233–41 (civil conspiracy), & 256–58 (declaratory judgment); *see also, e.g.*, Case No. 3:18-cv-2846-B, Doc. 1, Compl., ¶¶ 223–30 (Texas Business Opportunity Act and Deceptive Trade Practices Act). The Court will determine whether a stay is warranted as to each of these category of claims in turn.

The Court first finds that the state-law fraudulent-transfer claims alleged the Debtors, FundCorp, and Food Business are subject to the automatic stay. Claims seeking to recover estate property are subject to the automatic-stay provisions of § 362(a)(3). *In re Moore*, 608 F.3d 253, 261 (5th Cir. 2010). Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). As FundCorp and Food Business point out, debtors have a continued "legal or equitable interest in the property fraudulently transferred." Doc. 165, Mot. to Extend Stay, 3 (cleaned up) (quoting *In re Mortg. Am. Corp.*, 714 F.2d 1266, 1275 (5th Cir. 1983)). The Fifth Circuit has noted that:

> A typical fraudulent transfer claim is perhaps the paradigmatic example of a claim that is 'general' to all creditors . . . . It is normally the debtor's creditors, and not the debtor itself, that have the right to assert a fraudulent transfer claim outside of bankruptcy, but in bankruptcy such a claim is usually brought by the trustee, for the benefit of all creditors. This is because the claim is really seeking to recover property of the estate.

---

[2] The franchisees have represented in various responses to 12(b)(6) motions that they wish to voluntarily dismiss their Texas Business Opportunity Act and Deceptive Trade Practices Act claims. *See, e.g.*, Doc. 152, Franchisees' Resp. to Mot. to Dismiss of FBS, FundCorp, and Sovrano, 17. FundCorp and Food Business assert that the Court should not permit the franchisees to dismiss these claims voluntarily, but instead, should dismiss them on the merits, with prejudice. Doc. 165, Mot. to Extend Stay, 7. The Court does not resolve that issue now.

*In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 589 n.9 (5th Cir. 2008) (citing *In re Mortg.Am.*, 714 F.2d at 1272). The answer, then, of whether a cause of action belongs to the estate, as opposed to an individual creditor, "depends on whether under applicable state law the debtor could have raised the claim as of the commencement of the case." *Matter of Educators Grp. Health Tr.*, 25 F.3d 1281, 1284 (5th Cir. 1994). "If a cause of action alleges only indirect harm to a creditor . . . and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate." *Id.*

Here, FundCorp and Food Business argue that the franchisees' fraudulent-transfer claims allege injuries that are derived from harm done to the Debtor GiGi's Cupcakes and thus belong to Gigi's Cupcake's estate. Doc. 165, Mot. to Extend Stay, 5. The Court agrees. The franchisees fraudulent-transfer claims generally allege that Gigi's Cupcakes was "operationally insolvent" and did not "have enough financial support to sustain operations." *E.g.*, Doc. 6, Franchisee 4Box LLC's Answer & Countercl., ¶¶ 203–04. They further allege that in the months before Gigi's Cupcakes became insolvent, it made payments to FundCorp and Food Business for less than reasonably equivalent value. *Id.* ¶¶ 205–09. In response, the franchisees argue that some of their fraudulent-transfer claims against FundCorp and Food Business are based on actual fraud that resulted in particular and distinct injuries to them. Doc. 169, Franchisees' Resp., 12. But the franchisees point to no allegation in their complaints or counterclaims that support this assertion. Indeed, with respect to their fraudulent-transfer allegations, the franchisees have alleged only that FundCorp and Food Business received payments from Debtor Gigi's Cupcakes; they have alleged no specific conduct on FundCorp's or Food Business's part that is personal to or directed at them. In sum, the Court finds

that the injury asserted by the franchisees is general and common to all creditors, and thus, as property of Gigi's Cupcake's estate, the fraudulent-transfer claims are subject to the automatic stay in place in the Chapter 11 proceeding. *See In re Mortg.Am. Corp.*, 714 F.2d at 1275 (holding that state-law fraudulent-transfer claims are property of the bankruptcy estate and subject to the automatic stay under § 362(a)). The Court clarifies that this is not an extension of the automatic stay—instead, the Court is properly exercising its jurisdiction to determine that the scope of the § 362(a)(3) automatic stay includes these claims because they are property of the bankrupt estate.

Second, the Court finds that an extension of the discretionary stay is warranted as to the remaining claims—the civil-conspiracy, declaratory-judgment, and TBOA/DTPA claims—against FundCorp and Food Business.[3] Even when an extension of the automatic stay may not be warranted, "courts may also exercise their discretion to stay a proceeding against non-bankruptcy co-defendants 'in the interests of justice and in control of their dockets.'" *Nat'l Oilwell Varco, L.P. v. Mud King Prods., Inc.*, 2013 WL 1948766, at *3 (S.D. Tex. May 9, 2013) (quoting *Wedgeworth*, 706 F.2d at 545). "The burden to show that the stay is applicable to a non-debtor is on the party invoking the stay." *Id.* (quoting *Beran*, 747 F. Supp. 2d at 722–23). Some courts in this circuit have granted stays when "the allegations raised against co-defendants are 'inextricably interwoven' with claims against the debtor," such that severance of the claims would be inappropriate. *See Abrams v. Integrated Pro*

---

[3] The Court will not extend the automatic stay to the remaining claims in the case because FundCorp and Food Business have not shown that there is such an identity between themselves and the Debtors such that the Debtors may be said to be the real party defendant and that a judgment against FundCorp or Food Business would in effect be a judgment or finding against the Debtors. *See Reliant Energy Servs.*, 349 F.3d at 825 (quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)).

*Servs., LLC*, 2015 WL 7458604, at *4 (E.D. La. Nov. 24, 2015); *Blundell v. Home Quality Care Home Health Care, Inc.*, 2017 WL 5889715, at *4–6 (N.D. Tex. Nov. 29, 2017).

FundCorp and Food Business argue that the claims against them are inextricably interwoven with the claims against the Debtors because the franchisees' claims against them: (1) arise out of the same transactions or occurrences; (2) present common questions of law and fact; and (3) involve the same witnesses and documentary proof. Doc. 165, Mot. to Extend Stay, 7. They also argue that in order to find them responsible for conspiracy, a factfinder would "necessarily" have to find the Debtors responsible. *Id.* at 7–8. The franchisees respond that the similarity of claims is not a relevant to factor in determining if a discretionary stay is warranted. Doc. 169, Franchisees' Resp., 5–6. The franchisees also argue that the *Blundell* case, on which FundCorp and Food Business rely, dealt with extension of an automatic stay, not a discretionary one. *Id.* at 6. The franchisees are incorrect on both accounts—the *Blundell* court looked at both whether an automatic and a discretionary stay should apply to nondebtor codefendants in the case. *Blundell*, 2017 WL 5889715, at *2–3 (providing the legal standards for extending automatic and discretionary stays to nondebtors). In fact, the court refused to extend the automatic stay to the nondebtors in that case. *Id.* at *3 (holding that the nondebtors "have not demonstrated such a relationship and have not carried their burden to demonstrate that the § 362 stay may be extended to them") (quoting *Beran*, 747 F. Supp. 2d at 724). The court instead held that, "in the interest of justice and to appropriately control the Court's docket," a discretionary stay was warranted because the claims against the debtors were "inextricably interwoven" with those against the nondebtors. *Id.* at *6.

While the Court is not convinced that FundCorp and Food Business have shown that a judgment against them would in effect be a judgment against the Debtors to warrant an extension of the automatic stay, the Court does find that the claims against them are inextricably interwoven with the claims against the Debtors, such that severance would be inappropriate. Specifically, the only conduct the franchisees allege against FundCorp and Food Business—as opposed to conduct that is generally alleged against all the Gigi's Entities—is that they received payments from Gigi's Cupcakes, LLC. *See* Doc. 6, Franchisees 4 Box LLC's Answer & Countercl., ¶¶ 201–09. But the other claims brought against them—the conspiracy and declaratory-judgment claims—do not allege any specific conduct on their part.[4] It follows that to determine FundCorp and Food Business's liability for these claims, the Court may be required to resolve factual or legal issues that also affect the Debtors that are alleged to be part of this conspiracy. Further, there is no doubt that the same evidence, witnesses, and documentary proof will be required for these claims. *See Blundell*, 2017 WL 5889715, at *6 (citing *Abrams*, 2015 WL 7458604, at *3). Finally, FundCorp and Food Business's potential liability arises out of the same transactions or occurrences as the other Gigi's Entities. *Id.* at *6. Similar to the *Blundell* court, this Court finds that "judicial economy would not be facilitated by resolving [these claims] in separate actions and potentially with separate trials." *Id.* Weighing the competing interests in the case, the Court finds that a discretionary stay is justified because separately

---

[4] For example, the conspiracy claims generally allege that "Plaintiff, KeyCorp, Prior Franchisor, Gigi's Holdings, Gigi, Thompson, FundCorp, FBS, and Sovrano perpetuated Prior Franchisor, Gigi, and Thompson's original fraud by, *inter alia*, failing to amend, rescind, or renegotiate the UFA with Defendants." Doc. 6, Franchisee 4Box LLC's Answer & Countercl., ¶ 237; *see also id.* ¶¶ 236, 238–41 (making similarly generalized allegations). And the franchisees's declaratory-judgment claim alleges just that it is made "against Plaintiff and all To-be-joined Defendants." *Id.* at 56.

trying FundCorp and Food Business on the civil-conspiracy and declaratory-judgment claims would not only lead to undue prejudice but would prove inefficient and inconvenient. *Id.*; *see also LM Ins. Corp. v. Rockhill Inv. Tr.*, 2018 WL 2976103, at *2 (N.D. Miss. June 13, 2018) ("To require [the nondebtor] to defend against the alleged breaches [of contract], would, in effect, require the bankrupt Defendants to defense those claims as well."). And as further discussed below, while the Court recognizes the hardship the franchisees will face in having to wait to litigate their claims against these parties, the Court believes that some of this hardship will, at least in part, be alleviated because they will be permitted to litigate most of their claims against the prior franchisors, Butler, and Thompson.

B.  *The Civil-Conspiracy Claims Against Butler Are Stayed; the Rest of the Claims Can Proceed.*

As for Butler's motion (Doc. 166), the Court is not convinced that Butler has fully met her burden in seeking a stay. To start, the franchisees bring different claims based on different allegations against Butler. The franchisees generally bring the following claims against her:

1. Fraud based on material representations in disclosures to the franchise agreements;

2. Fraudulent concealment based on the same;

3. Negligent misrepresentation based on the same;

4. Fraud and fraudulent transfer under state statutes;

5. Civil conspiracy based on the fraud-based claims; and

6. Declaratory judgment.

*See, e.g.*, Doc. 6, Franchisee 4Box LLC's Answer & Countercl., ¶¶ 157–63, 166–71, 174–80, 183–86, 189–93, 233–41, 242–45, & 256–58.[5] Butler's only argument is that a discretionary stay should extend to these claims against her because they are "inextricably interwoven" with the claims against the Debtors. Doc. 166, Butler's Mot. to Stay, 3. Aside from the civil-conspiracy claims, the Court does not agree.

First, Butler's relationship with the Debtors, especially Gigi's Cupcakes and KeyCorp, is not as extensive as FundCorp and Food Business's connections to them. Butler is one of the original founders of the Gigi's Cupcakes franchise. Doc. 159, Butler's Mot. to Dismiss, 2. With the help of Thompson, Butler executed franchise agreements with the various franchisees involved in this case. *See, e.g.*, Doc. 6, Franchisee 4Box LLC's Answer & Countercl., 18–20. Through their own business entities, Thompson and Butler sold all the assets and franchise agreements to Gigi's Cupcakes, LLC. Doc. 159, Butler's Mot. to Dismiss, 2. Currently, it is unclear what involvement Butler currently has in franchise operations; she claims she has none, *id.*, while the franchisees allege that she has some interest based on her "continuing presence and influence over operation of the Gigi's franchise system." Doc. 6, Franchisee 4Box LLC's Answer & Countercl., ¶ 104. FundCorp and Food Business, on the other hand, undisputedly have a present relationship with the Debtors that directly relates to the operation of the franchise system. *See* Doc. 69, Food Business & FundCorp's Mot. to Dismiss, 1. The significance of this is that the claims against Butler arise mostly out of her dealings with the franchisees *before* the Debtors purchased the assets of the original franchise, while the claims against FundCorp and Food Business arise from the occurrences that occurred *after* the asset purchase.

---

[5] The various franchisee complaints and counterclaims allege nearly identical claims.

To elaborate on this distinction, the Court notes that the franchisees bring a number of fraud claims against Butler. These fraud claims are generally based on material misrepresentations Butler—as well as the prior franchisor and Thompson—made in disclosures prior to the execution of the different franchise agreements and made about the prior franchisor's financial health and solvency. *See, e.g.*, Doc. 6, Franchisee 4Box LLC's Answer & Countercl., ¶ 158; *see also id.* ¶ 167 (alleging Butler "concealed and suppressed accurate financial information in the [disclosures] concerning Prior Franchisor's financial health and operational solvency."). The only way in which these fraud claims relate to the Debtors is that the franchisees allege that the Debtors "are jointly and severally liable for Prior Franchisor's fraud because they had notice of that fraud at or before they acquired Prior Franchisor's assets" and because they are corporate successors of the prior franchisor. *See, e.g., id.* ¶¶ 164–65. The Court thus finds that while the fraud claims are alleged generally against Butler, Thompson, the prior franchisor, and the Debtors, their potential liability for fraud is based on different conduct; Butler's is based on her own misrepresentations and concealment, while the Debtors' liability is based on notice of Butler and the prior franchisor's alleged fraud.

Applying these facts to the legal burden of seeking a stay, Butler has "not shown that any hardship complained of is the result of proceeding to trial now. Nor is there a showing that the difficulties inherent in the general situation, including judicial inefficiency, constitute a sufficient offset to [the franchisees'] right to proceed without inordinate delay to resolution of their claims." *Beran*, 747 F. Supp. 2d at 725 (quoting *Wedgeworth*, 706 F.2d at 546). Unlike the claims against FundCorp and Food Business, the fraud claims against Butler are based solely on her own alleged actions and actions of other nonbankrupt parties. In sum, a discretionary stay is not warranted as to

the fraud-based claims against Butler because they are not so inextricably interwoven with those against the Debtors. The Court can efficiently and effectively resolve those claims with little to no involvement from the Debtors. To be clear, this holding also applies to the various state statutory-fraud and fraudulent-transfer claims, as well as the negligent-misrepresentation claims. Finally, the Court also denies an extension of the discretionary stay as to the declaratory-judgment claims for the same reasons—Butler's rights and obligations to the franchisees can be litigated here without regard to the status of the Debtors.

As for the conspiracy claims against Butler, the Court finds a discretionary stay is warranted for much of the same reasons the Court found it necessary to grant one to FundCorp and Food Business. Resolution of the civil-conspiracy claims will undoubtedly require substantially similar evidence and witnesses to determine whether Butler and the other parties, including the Debtors, entered into an agreement or common design to defraud the franchisees. It will also require the Court to resolve common questions of law and fact. The Court thus believes that the conspiracy claims alleged against Butler and the Debtors are inextricably interwoven and would result in undue prejudice to try them in separate trials. *See Blundell*, 2017 WL 5889715, at *6. The Court holds that under these circumstances, in the interest of justice and to appropriately control its docket, the civil-conspiracy claims in these consolidated cases are stayed.

C.  *Claims Against Thompson, Gigi's Franchising, and Gigi's Holdings Are Not Stayed.*

As noted above, *see supra* note 1, Thompson, Gigi's Franchising, and Gigi's Holdings have yet to make appearances in this matter. While a district court has "the general discretionary power to stay proceedings before it sua sponte in control of its docket and in the interests of justice," the

Court finds no reason to do so here. *McDonald v. Union Nat'l Life Ins. Co.*, 307 F. Supp. 2d 831, 836 n.7 (S.D. Miss. 2004) (cleaned up) (quoting *In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990)). The franchisees may therefore proceed with their claims against these parties.

### III.

### CONCLUSION

For the aforementioned reasons, the Court holds as follows:

1. FundCorp, Inc. and Food Business Services, LLC's Motion to Extend the Discretionary Stay (Doc. 165) is **GRANTED**. The Court **ORDERS** that the fraudulent-transfer claims against FundCorp and Food Business are **STAYED** pursuant to the automatic stays in the bankruptcy proceedings. The Court further **ORDERS** that, in its discretion, the remaining claims against FundCorp and Food Business are **STAYED** until either the bankruptcy proceedings against Debtors are resolved or until the bankruptcy court lifts the automatic stays in those cases. This case shall remain administratively closed as to FundCorp and Food Business.

2. Gina Butler's Motion to Extend the Discretionary Stay (Doc. 166) is **GRANTED, in part**, and **DENIED, in part**. The Court, in its discretion, **ORDERS** that the civil-conspiracy claims against Butler are **STAYED** for the same duration as the discretionary stay on the claims against FundCorp and Food Business. The Court **DENIES** the extension of the stay as to the remaining claims brought against Butler. Litigation of those claims may proceed. The Court **DIRECTS** the Clerk to reopen the case as to Gina Butler and reactivate Butler's Motion to Dismiss for Lack of Jurisdiction and for other relief (Doc. 159). The franchisees shall have twenty-one (21) days from the date of this Order to respond to that motion.

3. The claims against the remaining parties—Alan Thompson, Gigi's Franchising, LLC, and Gigi's Holdings, LLC—are not stayed. The Court **DIRECTS** the Clerk to reopen the case as to Thompson, Gigi's Franchising, and Gigi's Holdings. The franchisees shall continue litigating those claims.

4. The Court **ORDERS** that every **ninety (90) days** after the date of this Order, the parties must file a joint status report detailing the developments in the bankruptcy proceedings, as it relates to this action.

5. Finally, any party may move to fully reopen these cases and lift the stay as appropriate based on further developments.

SO ORDERED.

SIGNED: April 22, 2019.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE