UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GIGI'S CUPCAKES, LLC, | § | |
| | § | |
| Plaintiff/Counterdefendant, | § | |
| | § | |
| v. | § | CONSOLIDATED CIVIL ACTION NO. |
| | § | 3:17-CV-3009-B |
| | § | |
| 4 BOX LLC, et al., | § | |
| | § | |
| Defendants/Counterclaimants, | § | |
| | § | |
| v. | § | |
| | § | |
| KEYCORP, LLC, et al., | § | |
| | § | |
| Counterdefendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendant/Counterdefendant Gina Butler's Rule 12(b)(2) Motion to Dismiss All Claims Against Her (Doc. 159) and Defendant/Counterdefendant[1] Alan Thompson's Motion to Dismiss All Claims Against Him (Doc. 186). Having reviewed the parties' briefing and the applicable law, the Court finds that Butler and Thompson's motions should be and are hereby **GRANTED** because the Court lacks personal jurisdiction over these Defendants. Thus, all of the franchisees' claims against Butler and Thompson[2] are **DISMISSED**.

---

[1] For convenience, the Court refers to Butler and Thompson either by name or as "Defendants" for the remainder of this order.

[2] Specifically, the franchisees' claims against Butler and Thompson are dismissed in this case (Case No. 3:17-cv-3009-B), and the following cases: 3:17-cv-3010-B; 3:17-cv-3011-B; 3:17-cv-3012-B; 3:17-cv-3013-B; 3:17-cv-3014-B; 3:17-cv-3015-B; 3:17-cv-3016-B; 3:17-cv-3017-B; 3:17-cv-3018-B; 3:18-cv-2377-B; 3:18-cv-2381-B; 3:18-cv-2826-B; 3:18-cv-2828; 3:18-cv-2831-B; 3:18-cv-2843-B; and 3:18-cv-2846-B.

# I.

# BACKGROUND

This order relates only to the prior franchisors of the Gigi's Cupcakes franchise system. The prior franchisor parties are Gina Butler and Alan Thompson, and the now-defunct companies Gigi's Franchising LLC and Gigi's Holding LLC. The case remains stayed as to the current franchisor, Gigi's Cupcakes LLC, and its associated parties.

Generally, these cases involve disputes between franchisees of the Gigi's Cupcakes franchise system and their prior and current franchisors. None of the franchisees in these consolidated cases are from Texas. Nor are the prior franchisor parties. In this order, the Court must decide whether it has personal jurisdiction over the prior franchisor parties.

Butler and Thompson co-founded the Gigi's Cupcakes franchise in Tennessee. Doc. 159, Butler's Mot. to Dismiss, 2. They operated the franchise through a Tennessee limited-liability company, Gigi's Franchising LLC. *Id.* They expanded their business and signed on various franchisees across the United States, including at least one in the state of Texas. Doc. 177, Franchisees' Resp., 4. Butler and Thompson continued to grow the Gigi's franchise, signing on more franchisees. Eventually, Butler and Thompson sold their interests and assets in the franchise to one of the current franchisor parties, KeyCorp, LLC, a Texas entity. Doc. 159, Butler's Mot. to Dismiss, 2. KeyCorp assigned its interests in the franchise to Gigi's Cupcakes, LLC, another Texas entity. *Id.* Gigi's Cupcakes assumed, among other things, the former franchisor's rights and obligations under the Uniform Franchise Agreements (UFAs) governing the relationships between the former franchisor and its franchisees. Doc. 1, Compl., ¶¶ 19–20.

After the acquisition, the relationship between Gigi's Cupcakes and its franchisees soured. Gigi's Cupcakes believed that the franchise system had supply-chain problems, which it decided to resolve in part by requiring the franchisees to use a new food supplier. *Id.* ¶¶ 22–24. The franchisees allege that the food-supplier switch increased their costs and reduced their profits. *See, e.g.*, Doc. 6, Pappases' Answer & Countercl., ¶ 133. This initial dispute prompted the franchisees to review their respective UFAs, along with the associated financial disclosures from their prior franchisor. Doc. 59, Franchisees' Resp. to Gigi's Cupcakes, 3. Through this review, the franchisees allege that they discovered numerous fraudulent representations or omissions. *Id.* They allege that Butler, Thompson, and the prior franchisor (Gigi's Franchising LLC) were responsible for making these misrepresentations and that their UFAs are void. Doc. 6, Pappases' Answer & Countercl., ¶¶ 157–65. The franchisees also allege that Gigi's Cupcakes and KeyCorp should be held liable for the prior franchisor's fraud because they had notice of the fraud when they acquired the franchise system. *Id.* ¶¶ 164–65. The franchisees seek, among other things, to have their UFAs declared void. *Id.* at 57.

The parties initially tried to resolve their grievances in a dispute-resolution process governed by the UFAs. Doc. 53, Gigi's Cupcakes, Mot. to Dismiss, 2. When that failed, Gigi's Cupcakes moved first and sued a number of the franchisees in this Court. Doc. 1, Compl. Gigi's Cupcakes claimed that the franchisees had breached their UFAs and asked the Court to declare the UFAs valid and enforceable. The franchisees responded and brought counterclaims against their franchisor. *See, e.g.*, Doc. 6, Pappases' Answer & Countercl. Further, the franchisees joined and brought fraud-related

claims against other entities related to Gigi's Cupcakes,[3] as well as Thompson, Butler, and the prior franchisor entities. *Id.* Additional franchisees that were not sued in the original action filed their own complaints. *See* Doc. 91, Order. The Court consolidated these cases under this style. *See* Doc. 21, Order; Doc. 91, Order.

Then, several of the current franchisor entities—*i.e.*, Gigi's Cupcakes LLC, Sovrano LLC, Gigi's Operating LLC, and KeyCorp LLC—filed for bankruptcy. *See* Doc. 139, Suggestion of Bankruptcy; Doc. 161, Suggestion of Bankruptcy. This triggered the automatic-stay provision under 11 U.S.C. § 362(a), divesting this Court of jurisdiction over the claims involving those debtor parties. The Court also, in its discretion, stayed the franchisees' claims against FundCorp and Food Business Services LLC, two other nonbankrupt entities related to the current franchisor—the Court found that claims brought against these entities were "inextricably interwoven" with the claims brought against the debtors. Doc. 173, Mem. Op. & Order, 9. But the Court refused to stay the claims[4] brought against Butler, Thompson, and the prior franchisor because the allegations underlying the prior franchisor parties and the current franchisor parties are distinct. *Id.* at 12 (noting that the claims against the prior franchisor parties are "based on [their] own misrepresentations and concealment, while the Debtors' liability is based on notice of Butler and the prior franchisor's alleged fraud").

Now, Butler and Thompson—Tennessee citizens—ask the Court to dismiss the claims against them for lack of personal jurisdiction, lack of proper service, and improper venue. *See* Doc. 159,

---

[3] These entities include: KeyCorp LLC, Gigi's Operating LLC, FundCorp Inc., Food Business Services LLC, and Sovrano LLC. *See generally* Doc. 6, Pappases' Answer & Countercl.

[4] However, the Court did stay the civil conspiracy claim brought against these parties.

Butler's Mot. to Dismiss; Doc. 186, Thompson's Mot. to Dismiss. Butler and Thompson's contacts with Texas are discussed in greater detail below.

II.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(2) allows for the dismissal of an action in which the court lacks personal jurisdiction over the defendant. A federal court may assert jurisdiction over a nonresident defendant in a diversity suit if the state's long-arm statute applies and due process is satisfied under the Fourteenth Amendment to the United States Constitution. *Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 616 (5th Cir. 1989). Texas courts have interpreted the Texas long-arm statute as "extending to the limits of due process." *Bullion v. Gillespie*, 895 F.2d 213, 215 (5th Cir. 1990). Accordingly, to determine whether it may assert jurisdiction under the Texas long-arm statute, a federal court must determine whether jurisdiction comports with federal constitutional guarantees of due process. *Id.* at 216.

"The due process clause of the Fourteenth Amendment, as interpreted by the Supreme Court, permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has established 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Both prongs of the due process test must be met" for the Court to exercise personal jurisdiction over a defendant. *See id.*

A nonresident defendant's minimum contacts may either support an assertion of "specific" or "general" jurisdiction. *WNS Inc. v. Farrow*, 884 F.2d 200, 202 (5th Cir. 1989). A court may exercise "specific" jurisdiction when a cause of action arises out of a defendant's purposeful contacts with the forum. *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1361–62 (5th Cir. 1990). Alternatively, a court is said to have "general jurisdiction" when a defendant has engaged in continuous and systematic contacts with the forum. *Id.*

The party seeking to invoke federal jurisdiction bears the burden of establishing the requisite minimum contacts. *WNS*, 884 F.2d at 203. Further, "uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." *D.J. Invs.*, 754 F.2d at 546 (citations omitted).

## III.

## ANALYSIS

The Court finds that it does not have general or specific personal jurisdiction over the Tennessee Defendants Gina Butler and Alan Thompson. The Court thus **DISMISSES** the franchisees' claims against them. Because the Court finds it lacks jurisdiction over Butler and Thompson, the Court does not reach the other grounds for dismissal in their motions.

A. *Whether the Court has General Jurisdiction Over the Defendants*

The franchisees do not argue that this Court has general jurisdiction over Butler and Thompson. Nor does the Court find any basis to hold that Butler and Thompson's contacts with the forum state are "substantial, continuous, and systematic." *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615

F.3d 579, 584 (5th Cir. 2010) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)). Thus, the Court holds that it does not have general personal jurisdiction over Butler and Thompson.

B.     *Whether the Court Has Specific Jurisdiction Over the Defendants*[5]

To determine whether it can assert specific jurisdiction over Butler and Thompson, the Court considers the following factors: (1) whether Butler and Thompson have minimum contacts with Texas; (2) whether the franchisees' causes of action arise out of or result from Butler and Thompson's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *See Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) (reciting these factors). If the franchisees satisfy the first two factors with respect to each of their claims, then the burden shifts to Butler and Thompson "to show that exercising jurisdiction would be unfair or unreasonable." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014) (citation omitted).

The Court finds that the franchisees have failed to establish that their claims against Butler and Thompson arise out of the Defendants' contacts with the forum.[6] Before discussing the reasoning for this conclusion, the Court recounts the Defendants' contacts with Texas.

---

[5] Butler and Thompson's personal jurisdiction arguments significantly overlap; the Court thus considers them together.

[6] Although there are 17 unique complaints in this consolidated action, see *supra* note 2, the franchisees' claims against Butler and Thompson in each of these cases are nearly identical. *See* Doc. 59, Franchisees' Resp. to Mot. to Dismiss, 2 n.1 (noting that "the factual allegations are frequently identical between the different franchisees"). For convenience, the Court refers solely to the pleadings in the lead case, *Gigi's Cupcakes v. 4 Box, LLC, Nikolas Pappas & Loraine Pappas*. *See* Doc. 1, Compl.; Doc. 6, Pappases' Answer & Countercls.

1. <u>Butler and Thompson's Contacts with Texas.</u>

A non-resident defendant establishes minimum contacts with a forum state by purposely directing its activities towards that state or purposefully availing itself of the privileges of conducting activities there. *Seiferth*, 472 F.3d at 271 (citation omitted).

First, the franchisees argue that Butler and Thompson have contacts with Texas through the franchise system's operation in Texas. Doc. 177, Franchisees' Resp., 4; Doc. 190, Franchisees' Resp., 4. Specifically, the franchisees claim that through Gigi's Franchising—the now-defunct prior franchisor[7]—Butler and Thompson entered into multiple franchise agreements with Sugar On Top, a Texas-based company, in 2011 and 2013. Doc. 190, Franchisees' Resp., 4–5. The franchisees further allege that there are currently seventeen Gigi's franchises operating in Texas; however, the franchisees admit that it is "unclear" whether these Texas franchises opened before or after KeyCorp's acquisition of the franchise system. Doc. 177, Franchisees' Resp., 5 & n.1. Nonetheless, the franchisees assert that these Texas franchises are relevant with respect to this motion because they show that Texas companies have been "paying money to a franchise system," in which Butler and Thompson had a "prominent role." Doc. 177, Franchisees' Resp., 5; Doc. 190, Franchisees' Resp., 5. The franchisees also note that Sugar On Top has sued Butler and Thompson in Texas state court, alleging almost identical claims to those alleged by the franchisees in these consolidated cases. *Id.* The franchisees argue that the Sugar On Top contacts are relevant to Butler and Thompson's contacts here because they show that they "engaged in specific actions towards a Texas corporation

---

[7] Butler was the CEO of Gigi's Franchising, see Doc. 177, Franchisees' Resp., 4, while Thompson was the President and owner. *See* Doc. 190, Franchisees' Resp., 4.

which resulted in at least two executed [franchise agreements]." *Id.* at 5–6; 6. The franchisees go on to list the specific contacts Butler and Thompson made with Sugar on Top and its owners. *Id.* at 6; 6.

Second, the franchisees argue that Butler and Thompson have established minimum contacts with Texas via KeyCorp's acquisition of the Gigi's Cupcakes franchise. *Id.* at 9; 9–10. The franchisees argue that Butler and Thompson executed in their personal capacity the asset-purchase agreement that governed the acquisition. *Id.* And in this agreement they made numerous commitments to KeyCorp and agreed to be personally bound by the terms of the agreement. *Id.* For example, under the agreement, Butler granted KeyCorp the right to use intellectual property rights associated with her name and likeness to promote the franchise system. Doc. 177, Franchisees' Resp., 9–10.

Third, the franchisees assert that both Butler and Thompson continue to be employed, in a consulting-based capacity, by the franchisor entities: Butler has a consulting agreement with Gigi's Cupcakes LLC and Thompson has an employment agreement with Food Business Services. *Id.* at 9; Doc. 190, Franchisees' Resp., 9–10.

It is not sufficient, however, for the franchisees merely to show that Butler and Thompson have contacts with Texas. Rather, as part of their prima facie case to establish specific jurisdiction, the franchisees must show that their claims against Butler and Thompson arise out of these Texas contacts. *See Seiferth*, 472 F.3d at 271.

2. Whether the franchisees' causes of action arise out of or result from Butler and Thompson's forum-related contacts.

"For the exercise of specific jurisdiction to comply with due process, 'the *suit* must arise out of or relate to the defendant's contacts with the *forum*.'" *Inmar Rx Sols., Inc. v. Devos, Ltd.*, 786 F. App'x 445, 448 (5th Cir. 2019) (emphasis in original) (quoting *Bristol–Meyers Squibb Co. v. Super.*

*Ct. of Cal., S.F.*, 137 S. Ct. 1773, 1780 (2017)). "In other words, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (quotations omitted) (quoting *Bristol–Meyers Squibb*, 137 S. Ct. at 1780). "Such activity or occurrence must 'create a substantial connection with the forum State.'" *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). "Absent this connection, 'specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State.'" *Id.* (quoting *Bristol–Meyers Squibb*, 137 S. Ct. at 1781).

To start, Butler and Thompson argue that the Court should disregard the franchisees' references to the Sugar On Top lawsuit. *See, e.g.*, Doc. 191, Thompson's Reply, 2–3. They argue that the Sugar On Top lawsuit—and specifically the connections that Butler and Thompson established with the Texas plaintiff in that case—have no relevance in these cases, and thus the franchisees cannot rely on it to establish minimum contacts here. *Id.* Additionally, Butler and Thompson assert that any references to other nonparty Texas franchisees are similarly insufficient to establish personal jurisdiction in these cases.

The Court agrees that Butler and Thompson's relation with nonparty franchisees is not a sufficient basis for personal jurisdiction. The Court is guided by the Supreme Court's decision in *Bristol–Meyers Squibb*. 137 S. Ct. 1773. There, 600 plaintiffs filed eight separate complaints in California state court against Bristol–Meyers for injuries related to the drug Plavix. *Id.* at 1778. Around 80 of the plaintiffs were California residents; the rest were from other states. *Id.* Bristol–Meyers conceded that the 80 California plaintiffs could establish personal jurisdiction over

it, but disputed that the nonresident plaintiffs could establish jurisdiction. *Id.* Bristol–Meyers argued that the nonresident plaintiffs' claims did not relate to California as those plaintiffs did not buy Plavix there, were not injured there, and were not treated there. *Id.* Additionally, while it may have sold its drug in California, Bristol–Meyers argued that it did not develop, manufacture, or create a marketing strategy for Plavix there. *Id.*

The Supreme Court sided with Bristol–Meyers. *Id.* at 1777. The Court held that because "all the conduct giving rise to the nonresidents' claims occurred elsewhere," the California courts could not assert specific jurisdiction over Bristol-Meyers. *Id.* at 1782. The Court reasoned that the "mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.* (emphasis in original). Relying on *Walden*, the Court explained that "a defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 1781 (alterations in *Bristol–Meyers Squibb*) (quoting *Walden*, 571 U.S. at 286). "This remains true," the Court clarified, "even when third parties (here, the plaintiffs who reside in California) can bring claims similar to those brought by the nonresidents." *Id.*

That is the same situation this Court faces here. The franchisees are arguing that the Court has personal jurisdiction over Butler and Thompson based on their connections with third parties—*i.e.*, Sugar On Top and other Texas-based franchisees[8]—that operate in Texas. Thus, Butler

---

[8] Butler and Thompson both argue that aside from Sugar on Top, the franchisees have not shown that Butler and Thompson had relationships with other Texas franchisees. *See, e.g.*, Doc. 191, Thompson's Reply, 3. It could very well be, they assert, that these franchisees signed on after KeyCorp/Gigi's Cupcakes became the franchisor. The Court does not resolve that factual dispute here, and as discussed in more detail below, the Court finds the dispute immaterial to its decision.

and Thompson's relationships with Sugar On Top and the other nonparty Texas franchisees, standing alone, are not a sufficient basis for specific jurisdiction. *See Bristol–Meyers Squibb*, 137 S. Ct. at 1781.

The question then is whether Butler and Thompson's other connections with Texas can support jurisdiction. The first connection is Butler and Thompson's role in KeyCorp's acquisition of Gigi's Cupcakes. The franchisees assert that both Butler and Thompson made numerous representations in the asset-purchase agreement and that they executed this agreement in their individual capacities. Doc. 177, Franchisees' Resp., 9–10; Doc. 190, Franchisees' Resp., 9–10. As the franchisees frame it, "Butler made a substantial number of commitments with a Texas company when the [asset-purchase agreement] was executed." Doc. 177, Franchisees' Resp., 10; *see also* Doc. 190, Franchisees' Resp., 10 (arguing the same is true for Thompson). Indeed, Butler states that "the only thing connecting [her] to Texas, in this case, is the asset sale event." Doc. 182, Butler's Reply, 4. But Butler disputes that there is a nexus between this acquisition and the claims the franchisees bring against her. Doc. 159, Butler's Mot. to Dismiss, 11. Butler instead claims that the alleged injuries arose out of acts or omissions that Butler committed before the asset sale and that these acts did not occur in Texas. *Id.* at 11–12. Thompson makes the same rebuttal to this Texas connection. *See* Doc. 186, Thompson's Mot. to Dismiss, 7–8.

The second connection is Butler and Thompson's continued working relationship with the current franchisor's related entities. Doc. 177, Franchisees' Resp., 9–10; Doc. 190, Franchisees' Resp., 9–10. Thompson, for example, visited Texas as part of his work for the current franchisor. Doc. 190, Franchisees' Resp., 10. In his reply, Thompson concedes that he made a "few trips to

Texas during the summer of 2016 . . . ." Doc. 191, Thompson's Reply, 3. But he disputes that these trips have "any bearing on Franchisees' fraud claims[.]" *Id.* at 3–4. For her part, Butler admits that she entered into a consulting agreement with Gigi's Cupcakes, and that, as part of this agreement, she attended the opening of several Gigi's Cupcakes franchises, one of which was in Texas. Doc. 159, Butler's Mot. to Dismiss, 5. However, she disputes the franchisees' characterization that she was an "employee" of Gigi's Cupcakes or KeyCorp. *Id.* at 8. And aside from her one visit to Austin, Texas for a franchise opening, Butler claims her work under the consulting agreement took place in Tennessee. *Id.* at 9. She also generally argues that, like the first connection, this connection does not relate to the franchisees' claims either. Doc. 182, Butler's Reply, 3–4.

The Court agrees with Butler and Thompson that the franchisees' claims do not relate to or arise out of the above connections. This is apparent when one looks to the specific allegations against Butler and Thompson.

The franchisees' claims against Butler and Thompson are based in fraud—specifically, fraud in relation to representations that Butler, Thompson, and the prior franchisor entities made in connection with the franchisees' UFAs. *See, e.g.*, Doc. 6, Pappases' Answer & Countercls., 40–46, 54–55. These fraud-related claims include: (1) Deceit Based on Fraud; (2) Fraud by Concealment; (3) Negligent Misrepresentation; (4) Fraud and Deceit under the Franchisee's state law[9]; and (5) Deception under state law. Each of these claims has the same factual underpinning: Butler and Thompson made false representations in franchise disclosures concerning the profitability, viability,

---

[9] The franchisees' various complaints differ with respect to these state-law claims for fraud, insofar as they cite to their respective states' statutes. However, the factual allegations underlying these claims do not substantially differ.

and financial health of the franchise, and the franchisees relied on these representations in executing their respective UFAs. *See, e.g.*, *id.* ¶¶ 157–65. Additionally, these claims bootstrap in the current franchisors—Gigi's Cupcakes LLC and KeyCorps—by alleging that they are "jointly and severally liable" for Butler and Thompson's fraudulent acts because "they had notice of that fraud at or before they acquired" the franchise and because they are the corporate successors of the prior franchisor. *Id.* ¶¶ 164–65, 172–73, 181–82, 187–88.

The Court finds that these fraud-related claims do not arise out of Butler and Thompson's alleged connections with Texas. Starting with the sale of the Gigi's franchise to a Texas-based company, the Court notes that the fraudulent acts alleged have no relation to this sale. Butler and Thompson made the alleged misrepresentations in franchise disclosures that were provided to the individual Franchisees, none of whom reside in Texas. And Butler and Thompson had no purported connections to Texas at this time. Indeed, these disclosures were made prior to the sale of the franchise to KeyCorp. Doc. 182, Butler's Reply, 4. Further, the sale of the Gigi's franchise to KeyCorp seems to have no relation at all to the substance of the claims against Butler and Thompson. As the Court reads the claims, Butler and Thompson's liability rests solely on the fact that they made false representations when signing up new franchisees. KeyCorp and Gigi's Cupcakes liability, on the other hand, relates to the asset sale. Thus, like in *Bristol–Myers*, the "relevant plaintiffs are not [Texas] residents and do not claim to have suffered harm in that State. In addition . . . all the conduct giving rise to the nonresidents' claims occurred elsewhere." *Bristol–Myers*, 137 S. Ct. at 1782. Here, the conduct would have taken place in Tennessee, where Butler and Thompson originally operated the franchise system, and the states of the franchisees, where they opened and ran their franchises.

Take the franchisee in the lead case as an example. In this case, the franchisee 4 Box, LLC, and its owners Nikolas and Loraine Pappas, are all residents of the state of Indiana. Doc. 6, Pappases' Answer & Countercl., 13 ¶¶ 1–3. The Pappases claim that in 2009 they visited Nashville, Tennessee and, while there, started discussing the possibility of opening a Gigi's Cupcakes franchise with Butler. *Id.* ¶ 29. Then, after an initial financial disclosure on their part, the Pappases allegedly received the first franchise disclosure document from Butler and Thompson. *Id.* ¶¶ 31–32. They allege that this disclosure contained materially misleading statements and omissions about the health of the franchise system. *Id.* ¶¶ 33–40. The Pappases allege that they would not have started a Gigi's Cupcakes franchise if they had known that these representations were false or misleading. *Id.* ¶ 43. Instead, apparently mislead about the viability of these franchises, the Pappases proceeded to open three Gigi's Cupcakes franchises in Indiana. *Id.* ¶¶ 47, 53, 66–67 & 84. Butler and Thompson provided the Pappases with additional allegedly fraudulent franchise disclosures for the second and third franchise stores they opened in Indianna. *Id.* ¶¶ 56, 71. Because of this, they claim that they put in a substantial amount of work at their franchises without receiving compensation and that 4 Box "lost a substantial amount of money" every year of its operation. *Id.* ¶¶ 92–93. The brunt of the Pappases' harm, then, was felt in Indianna.

To sum up, the Pappases' claims against Butler and Thompson do not involve a harm that occurred in Texas or a harm that occurred to a Texas resident. *See Bristol–Myers*, 137 S. Ct. at 1782 (distinguishing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984)). Additionally, as in both *Bristol–Myers* and *Walden*, "all the conduct giving rise to the [Pappases'] claims occurred elsewhere," *id.*; *Walden*, 571 U.S. at 291, specifically, Tennessee and Indiana. The fact that Butler and Thompson

were later involved in the sale of the franchise to a Texas corporation does not relate to these fraud claims. Thus, this Texas connection cannot support specific jurisdiction for these claims.

The same is true of the second connection—Butler and Thompson's continued work with the current franchisor entities. The franchisees have not alleged that this work ties in to their fraud claims against Butler and Thompson. Like the asset sale, their consulting contracts and the work performed under them occur after the events giving rise to the franchisees' fraud-related claims. The Court therefore finds that the franchisees have not shown how their fraud-related claims arise out of or relate to the connections they allege that Butler and Thompson have with Texas. Accordingly, the franchisees have not established that the Court has specific personal jurisdiction over Butler and Thompson with respect to these claims.

The only other claim asserted against Butler and Thompson is a general conspiracy claim. But Texas courts have held that "alleging a conspiracy cause of action does not provide an independent basis for jurisdiction." *Crownover v. Crownover*, 2016 WL 11522978, at *12 (W.D. Tex. Sept. 20, 2016) (citing *Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995) (declining to recognize "the assertion of personal jurisdiction over a nonresident defendant based solely upon the effects or consequences of an alleged conspiracy with a resident in the forum state")); *see also Delta Brands Inc. v. Danieli Corp.*, 99 F. App'x 1, 6 (5th Cir. 2004) (per curiam) ("To establish its prima facie case of specific jurisdiction, [the plaintiff is] required to demonstrate that [defendant] individually, and not as part of the conspiracy, had minimum contacts with Texas."). Because the Court does not have personal jurisdiction over the franchisees' other claims against Butler and Thompson, their conspiracy-related allegations cannot independently be the basis for jurisdiction.

To conclude this discussion, the Court finds that the franchisees have not established specific personal jurisdiction over Gina Butler or Alan Thompson. The Court thus **DISMISSES** the franchisees' claims against them for want of jurisdiction. The Court does not reach Butler or Thompson's remaining arguments for dismissal and/or transfer.

B.     *Whether the Franchisees Should Be Permitted to Conduct Jurisdictional Discovery*

In response to Butler and Thompson's motions to dismiss, the franchisees request that if the Court finds that they have not established their prima facie case as to personal jurisdiction, then the Court should allow them to conduct limited jurisdictional discovery. Doc. 190, Franchisees' Resp., 14–15. But "jurisdictional discovery is only appropriate after a plaintiff has made a preliminary showing of jurisdiction." *Baird v. Shagdarsuren*, – F. Supp. 3d –, 2019 WL 6618934, at *6 (N.D. Tex. 2019) (quoting *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 857, 620 (N.D. Tex. 2014) (collecting cases)). "To make a preliminary showing, the plaintiffs' pleadings must contain 'factual allegations that reasonably suggest that personal jurisdiction exists . . . .'" *Id.* (quoting *Innova Hosp.*, 995 F. Supp. 2d at 620). The Court finds that the franchisees have failed to do so—the franchisees failed to plead any facts in their claims against Butler and Thompson that suggest the fraud they purportedly committed has any relation to Texas.

Morever, the franchisees have not alleged what discovery, if permitted, would allow them to successfully establish personal jurisdiction. *See Innova Hosp.*, 995 F. Supp. 2d at 620 (" . . . Plaintiffs have not alleged that jurisdictional discovery will support a finding of personal jurisdiction."). Instead, the franchisees request discovery on Butler and Thompson's relationship with *other* Texas franchisees. *See* Doc. 177, Franchisees' Resp., 13. The Court already concluded that contacts with

these non-forum franchisees were not sufficient to establish personal jurisdiction over Butler and Thompson. Discovery related to these Texas franchisees would not change this result. Thus, the Court denies the franchisees' request for jurisdictional discovery.

## IV.

## CONCLUSION

Based on the foregoing, it is **ORDERED** that Gina Butler's Motion to Dismiss (Doc. 159) and Alan Thompson's Motion to Dismiss (Doc. 186) are hereby **GRANTED**. The franchisees' claims against Gina Butler and Alan Thompson are therefore **DISMISSED** for lack of personal jurisdiction. The Court does not reach the other arguments in Defendant Butler and Thompson's motions.

**SO ORDERED.**

**SIGNED: March 4, 2020.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE